***NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| HYDEACARR CAMPBELL,<br>Plaintiff,<br>v.<br>DR. JOHN DOE/DR. JANE DOE NEW JERSEY STATE PRISON CHIEF OF MEDICAL STAFF, et al.,<br>Defendants. | : | Civil Action No. 12-2750 (SDW)<br>**OPINION** |

**WIGENTON**, District Judge:

Presently before the Court is Defendant Ralph Woodward's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56. (ECF No. 114). Plaintiff has filed opposition to the motion, (ECF No. 126), to which Defendant replied. (ECF No. 130). For the following reasons, this Court will grant the motion and will dismiss Plaintiff's remaining § 1983 claims for failure to exhaust administrative remedies.

## I. BACKGROUND

This Court previously summarized the basic factual background and procedural history of this matter as follows:

> On or about May 7, 2012, Plaintiff, Hydeacarr Campbell, filed a

> complaint asserting that various officials at New Jersey State Prison and several related facilities had violated his constitutional rights by failing to properly treat him following a pair of surgeries to remove a cyst under his right armpit and to combat an inflammatory infection in his right buttock area. (ECF No. 1). On January 22, 2013, this Court entered an order and opinion screening the complaint and permitting Plaintiff's claim that the New Jersey State Prison medical staff had failed to treat him following his surgeries to proceed as a claim for deliberate indifference to medical needs in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983. (ECF No. 2-3). Plaintiff made several attempts to serve the chief of medical staff of the prison, but was unsuccessful until after the appointment of counsel on June 20, 2014. (ECF No. 16).
>
> . . . .
>
> On August 19, 2015, new counsel was assigned to Plaintiff. (ECF No. 32). Following several extensions, new counsel filed an amended complaint on October 8, 2015. (ECF No. 38). Although the amended complaint was based on the same facts as the original – i.e. the failure to provide Plaintiff with prescribed medical treatment after his surgeries – the amended complaint specifically named [several new] Defendants . . . [including] Dr. Ralph Woodward.

(ECF No. 53 at 2-3). Litigation in this matter thereafter continued, some Defendants were dismissed from this matter, and discovery commenced. (ECF Docket Sheet).

During discovery, Defendant conducted a deposition of Plaintiff. During his deposition, Plaintiff testified that, after having surgery, his surgeon told doctors at New Jersey State Prison that Plaintiff required physical therapy. (Document 7 attached to ECF No. 114 at 8). When no therapy was provided, Plaintiff "complain[ed] to the guards" but was provided only one brief session to help him learn how to walk again. (*Id.* at 9). Plaintiff thereafter continued to complain to the guards, and was moved to a different cell. (*Id.*). Although Plaintiff continued to complain to the guards, Plaintiff did not file a grievance or inmate remedy form, nor did he speak with

anyone in the prison ombudsman's office regarding the issue. (*Id.*). Plaintiff explained this failing by stating that he wasn't aware he had to file remedy forms, but would have filed them had he been aware of them. (*Id.* at 10). Because his complaints to the guards, and later complaints to some nurses who came to change his bandages, did not produce results, Plaintiff began requesting a transfer. (*Id.*).

Approximately four months after his original surgery in August 2008, Plaintiff was transferred to Northern State Prison in December 2008. (*Id.* at 11). Following this transfer, Plaintiff did not complain about the lack of therapy, nor did he file any inmate remedy forms or grievances regarding the lack of therapy. (*Id.*). Plaintiff's silence about the alleged lack of treatment continued for four years until he was transferred to East Jersey State prison in 2012. (*Id.*). While in East Jersey, Plaintiff likewise failed to complain or file any grievances regarding the treatment issue because he didn't believe that further complaints would make any sense. (*Id.*). Petitioner likewise did not submit complaints or remedy forms after his transfer to a halfway house. (*Id.*). Plaintiff also testified at his deposition that he never specifically spoke to or submitted his complaints to Defendant Dr. Woodward. (*Id.* at 12). Ultimately, Plaintiff testified that he never submitted any kind of written complaint or grievance form regarding the alleged failure of the prison to provide him with therapy for the six years he was incarcerated following his surgery, and instead only made verbal complaints to individual nurses or prison guards in the immediate aftermath of his surgery prior to his first transfer in December 2008. (*Id.* at 16).

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present

actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

## B. Analysis

In his summary judgment motion, Defendant argues that Plaintiff's § 1983 medical claims should be dismissed because Plaintiff, who was incarcerated at the time he filed his initial complaint in this matter, failed to administratively exhaust his claims. Pursuant to 42 U.S.C. § 1997e, a plaintiff who is an incarcerated prisoner at the time he files his complaint is required to exhaust all available administrative remedies before he may file a federal civil rights suit challenging "prison conditions." *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). A prisoner is required to meet this exhaustion requirement before filing suit "even where the relief sought – [such as] monetary damages – cannot be granted by the administrative process." *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 734 (2001). Where an administrative procedure is available and capable of being used, a plaintiff seeking to challenge prison conditions via a federal civil rights action must fully and properly exhaust his administrative remedies prior to filing suit, and exceptional circumstances will not excuse a plaintiff's failure to exhaust. *Ross v. Blake*, --- U.S. ---, ---, 136 S. Ct. 1850, 1856-57 (2016).

Because Plaintiff's medical claims concern matters of prison life, *see Booth v. Churner*, 206 F.3d 289, 298 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"), and because Plaintiff was a prisoner at the time he filed his initial

complaint, this matter is subject to § 1997e's exhaustion requirement. *See, e.g., Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir 2001). That Plaintiff filed an amended complaint – rather than a new action – after his release does not change the fact that he is subject to this requirement. *Id.* (finding that any post-release amended complaint asserting that Plaintiff was no longer incarcerated was futile because it would not change the fact that the plaintiff was required to exhaust when he filed his initial complaint and his later release did not obviate the need for exhaustion). Any failure to exhaust by Plaintiff prior to filing his initial complaint would thus render this matter subject to dismissal unless Plaintiff can show that he falls into the statutory exception discussed in *Ross*. This exception to the exhaustion requirement will only apply where there no administrative remedy is available either because the state has provided no remedy to prisoners, the administrative remedy provided is incapable of being used because it acts as a "simple dead end," or the procedure is so confusing or draconian that "all but the most skillful" prisoners are prevented from properly exhausting their claims. *Ross*, 136 S. Ct. at 1859-61. A prisoner's transfer from one prison to another within the same state prison system, neither relieves him of the obligation to exhaust his claims nor renders his administrative remedies unavailable. *See Jackson v. Grundy*, 877 F. Supp. 2d 159, 176-77 (D.N.J. 2012); *see also Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005); *Napier v. Laurel Cnty., Ky*, 636 F.3d 218, 223 (6th Cir. 2011) ("[g]enerally, the transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for the purposes of exhaustion").

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. A prisoner therefore properly exhausts his administrative remedies only by seeking all available administrative remedies while at least substantially complying with the rules and regulations of the applicable administrative body, in this case the state prison system. *Id.* at 90-103; *Small*, 728 F.3d at 272 (completion of the administrative review process "means 'substantial' compliance with the prison's grievance procedures"). In determining whether a prisoner has successfully exhausted, a court must look to the grievance regime of the prison facility to determine what steps are required to fully exhaust, and compliance with those procedures is all that is required to properly exhaust a claim. *See Jones v.* Bock, 549 U.S. 199, 218 (2007). Because exhaustion is a threshold issue affecting a plaintiff's entitlement to relief, it is the Court, and not a jury, that determines whether a given plaintiff has properly exhausted his claims, even to the extent of resolving any factual disputes related to the exhaustion issue. *Small*, 728 F.3d at 269-71.

New Jersey's "Inmate Remedy System is a comprehensive system that includes the opportunity for an inmate to submit an 'Inmate Inquiry Form' or 'Inmate Grievance Form' and, in response to the resulting decision or finding, to submit an 'Administrative Appeal.'" N.J. Admin Code § 10A:1-4.4(c) (2018). Exhaustion of administrative remedies therefore requires that a prisoner both submit an inquiry or grievance form, and an administrative appeal of any adverse decision on the inquiry or grievance form. § 10A:1-4.4(d). These remedy forms "must be complete, legible, and include a clear and concise statement" of the prisoner's claim, and "shall contain the full name, [inmate] number and, when required, signature of the inmate submitting the form." § 10A:1-4.4(e). Upon the filing of an inquiry or grievance form, a prisoner will receive a response within fifteen or thirty days respectively as to the two types of forms, unless the

coordinator of the prison's grievance system determines more time is needed, in which case the prisoner shall be informed of the need for more time. § 10A:1-4.4(i), 4.5(d). Upon receiving a final response to the form, Petitioner may file his administrative appeal, within ten calendar days, at which point he will receive a final decision on his appeal within ten further calendar days. § 10A:1-4.6.

According to Plaintiff at his deposition, he never filed a formal grievance or complaint, nor submitted any form of written complaint with the various prisons or the New Jersey Department of Corrections. Instead, he made complaints to individual guards and nurses. Clearly, such verbal complaints do not comply with the grievance procedures put into place by the New Jersey Department of Corrections. Thus, by his own admission, Plaintiff has failed to properly and fully exhaust his current § 1983 claims. That Plaintiff was apparently ignorant of the procedures for exhaustion is insufficient to excuse this failing. *See, e.g., Tirado v. Dep't of Corr.*, No. 13-1709, 2014 WL 5860598, at *4 (W.D. Pa. Nov. 12, 2014) (citing *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2003), for the proposition that "ignorance or confusion regarding . . . [prison grievance] policies does not excuse failure to adhere" to proper exhaustion requirements); *see also Stokes v. Wenerowicz,* No. 13-7093, 2017 WL 3226863, at *4 (E.D. Pa. July 31, 2017); *Miller v. Schuylkill Cty. Prison*, No. 07-0331, 2007 WL 3342766, at *1 (M.D. Pa. Nov. 9, 2007) ("an inmate's subjective lack of awareness regarding administrative remedies will not excuse" his failure to exhaust). Instead, his failure to exhaust could only be excused if he could meet the statutory exceptions to exhaustion.

In that regard, Plaintiff provides only one argument – that Plaintiff was not required to exhaust because he believed any administrative remedy was a "dead end" because his repeated

complaints to guards that he was entitled to physical therapy went unanswered. Plaintiff's deposition testimony, however – the only evidence in the record on this issue – makes out no such claim. Although Plaintiff did testify that the guards and at least one nurse ignored his verbal complaints, Plaintiff also testified that he never complained to the prison ombudsman, never filed any form of grievance, and never sent any written complaint to the prison or Department of Corrections. Indeed, after his transfer to a different prison in December 2008, Plaintiff made no further attempts to complain – verbally or in writing. This silence then continued for several years and through transfers to another prison and ultimately a halfway house. Thus, Plaintiff had ample time and opportunity to make a written complaint – before or after his transfer – and did not do so. Plaintiff never attempted to comply with the prison's grievance system, and Plaintiff therefore cannot show that the system was a "dead end" merely because his complaints to individual guards or nurses fell on deaf ears. Although the behavior Plaintiff describes on behalf of the guards may have been reprehensible, that alone does not suffice to show that no administrative remedy was available or that the available remedy was a dead end. Plaintiff had nearly six years during which he could have filed an administrative grievance, and he never did so. Plaintiff's failure cannot be excused simply because Plaintiff believed any further complaints would be futile. As there is no evidence to suggest Plaintiff ever attempted to properly exhaust his claim – indeed, his testimony is quite to the contrary – and as there is no evidence that any prison officials actually stood in the way of an attempt by Plaintiff to properly exhaust his claim in accordance with prison procedures, Plaintiff has not provided facts sufficient to support a finding that his administrative remedies were unavailable. *See, e.g., Ross*, 136 S. Ct. at 1859-61. Plaintiff has thus not shown any valid basis on which this Court can excuse his failure to exhaust his claims, and Plaintiff's remaining claims

– all of which are subject to the exhaustion requirement – must therefore be dismissed without prejudice for failure to exhaust. Defendant's motion shall therefore be granted.[1]

## III. CONCLUSION

For the reasons stated above, this Court will grant Defendant's motion (ECF No. 114) and will dismiss this matter without prejudice for failure to exhaust administrative remedies. An appropriate order follows.

Dated: September 26, 2018

***s/ Susan D. Wigenton***
Hon. Susan D. Wigenton,
United States District Judge

---

[1] Because this Court will grant Defendant's motion based on Plaintiff's failure to exhaust his claims, this Court need not and does not address Defendant's timeliness or merits arguments. Likewise, while Plaintiff, who is no longer incarcerated, is free to file a new action based on his allegations in this matter insomuch as a dismissal for lack of exhaustion is without prejudice and Plaintiff would no longer be subject to the exhaustion requirements, any new complaint would still be subject to § 1983's statute of limitations. *See, e.g, Ahmed*, 297 F.3d at 210 (plaintiffs who have been released may file suits addressing prison conditions to which they were subject prior to their release without having to exhaust claims); *Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (§ 1983 claims in New Jersey subject to two-year statute of limitations). Because this Court will dismiss this matter for lack of exhaustion and because that dismissal is not conditional, however, Plaintiff's claims would most likely be time barred given the fact that Plaintiff has been out of prison for approximately four years. *See, e.g., Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) (unconditional dismissal of an action without prejudice does not toll running of statute of limitations as original complaint "is treated as if it never existed").